IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANGELA SINGLETON**, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1-22-cv-00999-JMC |
| **MARYLAND TECHNOLOGY DEVELOPMENT CORPORATION**, | | |
| | * | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Angela Singleton brings this defamation and unlawful employment practices action against Defendant Maryland Technology Development Corporation ("TEDCO") seeking damages and punitive damages in compensation for harm caused by Defendant's alleged willful and intentional discriminatory and retaliatory actions against Plaintiff. (ECF No. 1 at 19–20). Presently before the Court is Defendant's Motion to Dismiss (ECF No. 11). In addition to Defendant's Motion to Dismiss, this Court has considered Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 14), and Defendant's Reply to Opposition to Motion to Dismiss (ECF No. 15). No hearing is necessary. *See* Loc. R. 105.6. (D. Md. 2021). For the reasons explained below, Defendant's Motion to Dismiss is GRANTED.

I. **BACKGROUND**

Plaintiff, a resident of Annapolis, Maryland, is an African American, female entrepreneur and investor. (ECF No. 1 at 2). Although contested by Defendant, Plaintiff maintains that she was an employee of TEDCO from August 2012 to June of 2020. *Id.* From August 2012 to August 2016, Plaintiff worked mentoring Maryland entrepreneurs in the field. *Id.* In August 2016, Plaintiff began

working from TEDCO's Columbia, Maryland headquarters where she joined TEDCO's Seed Investment Fund ("SIF"). *Id.* Plaintiff alleges that shortly after beginning work at TEDCO's headquarters, she began to experience and witness significant race and sex discrimination. *Id.* at 3. Plaintiff alleges that this discrimination worsened upon her transfer to the Maryland Venture Fund ("MVF") in 2017, where she was routinely shunned, ignored, insulted, and screamed at by her male colleagues. *Id.* When Plaintiff requested an essential, electronic tool that her colleagues used in performing their jobs, Plaintiff was denied access to the tool in a condescending and patronizing manner. *Id.* at 4. In 2018, Plaintiff complained to TEDCO's President and COO, John Wasilisin about discrimination. *Id.* However, no disciplinary action against any member of the MVF team occurred. *Id*. Rather, Plaintiff and her only female colleague in MVF were transferred to a new position. *Id.* at 5.

Plaintiff was placed in a new position and developed an idea to create a fund which focused on assisting minority entrepreneurs: Builder Fund ("BF"). *Id.* Despite Plaintiff's efforts in creating BF, TEDCO resisted making Plaintiff director of BF and instead appointed her as co-manager along with a less-qualified, male colleague. *Id.* Plaintiff, as co-program manager of BF, was treated as lesser than other co-program managers; unlike other co-program managers, Plaintiff had to repeatedly request office space and was often excluded from TEDCO leadership meetings. *Id.* Furthermore, BF was denied additional staffing despite other similarly sized programs having at least two full-time staff members. *Id.* at 7. Unlike other similar programs, BF's pending investment closings were transferred back to the Office of the Attorney General ("OAG") for processing. *Id.* at 8. Shortly after Plaintiff voiced her concerns regarding race and sex discrimination in a workplace cultural study, Linda Singh, the recently hired interim executive director of TEDCO, placed Plaintiff under the supervision of Interim Managing Director Elizabeth Good Mazhari. *Id.*

at 7. Plaintiff alleges that in 2019, she became the target of a retaliatory defamation campaign perpetrated by 1) Ms. Singh, 2) Plaintiff's direct report Mr. Tim Wilson, 3) Ms. Mazhari, and 4) Human Resources Representative Ms. Li Na Goins. *Id.* at 7–13. According to Plaintiff, this defamation campaign resulted in her wrongful termination on June 19, 2020. *Id.* at 12–13.

Based on her allegations, Plaintiff has filed suit under 42 U.S.C. § 1981, the Maryland Fair Employment Practices Act ("MFEPA"), and Maryland defamation law. (ECF No 1. at 13–19). Plaintiff asserts that this Court has subject matter jurisdiction over her claim pursuant to U.S.C. § 1331 because this action involves a federal question under 42 U.S.C. § 1981. (ECF No. 1 at 1–2). Plaintiff further asserts that this Court has supplemental jurisdiction over her state law claims pursuant to 28 U.S.C § 1367.

Defendant's instant motion argues that this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) based on sovereign immunity or, in the alternative, that the claims should be dismissed pursuant to Federal Rule 12(b)(6) for failing to state a claim upon which relief can be granted. As set forth more fully below, the Court does not agree with Defendant's characterization of its challenge to subject matter jurisdiction as a "facial" one rather than "factual." However, the Court does agree that Defendant is immune from suit based on Eleventh Amendment sovereign immunity. Accordingly, the Court will GRANT Defendant's Motion pursuant to Rule 12(b)(1), without prejudice.

## II.   STANDARD OF REVIEW

The existence of subject matter jurisdiction, both constitutionally pursuant to Article III and statutorily pursuant to the various enabling statutes found in Title 28, is a prerequisite to the exercise of power by a federal court. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

94–95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). Unlike personal jurisdiction which can be waived, subject matter jurisdiction cannot be conferred by any action by the parties. *Id*. at 480.

State sovereign immunity originates in the Eleventh Amendment to the U.S. Constitution. Although the language of the Eleventh Amendment suggests that it deprives a federal court of subject matter jurisdiction over such claims, and some courts have reached that conclusion using a traditional analysis, the Fourth Circuit has noted important differences between a traditional subject matter jurisdiction analysis under Article III to the Constitution, and the hybrid jurisdictional analysis required by the Eleventh Amendment. In *Constantine*, *supra*, for example, relying primarily on the fact that, unlike subject matter jurisdiction, Eleventh Amendment immunity can be waived by the parties and imposes no requirement on a court to raise it *sua sponte*, the Fourth Circuit concluded that Eleventh Amendment immunity does not deprive a court of subject matter jurisdiction in the traditional Article III sense. *Id*. at 482. At the same time, the Court noted that Eleventh Amendment immunity was not a mere affirmative defense given the reality that it is not simply a defense to a plaintiff's allegations, but a privilege designed "to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Id*. (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). All this is to say that while the Eleventh Amendment cannot be considered a true limit on this Court's subject matter jurisdiction, it nonetheless blocks the exercise of that jurisdiction when present. *Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 865 (D. Md. 2018).

Thus, notwithstanding the hybrid nature of Eleventh Amendment immunity, the decisions in this District have favored addressing Eleventh Amendment sovereign immunity under the rubric of a Rule 12(b)(1) analysis versus Rule 12(b)(6). *Id*.; *see also Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F. Supp. 3d 567, 579 n.6 (D. Md. 2021). The Court will do so here. This mechanism is

also consistent with the Supreme Court's direction that because it establishes not just a defense but a privilege from suit, sovereign immunity should be addressed at an early stage of the case. *See Alden v. Maine*, 527 U.S. 706, 713 (1999).

Under Rule 12(b)(1), the plaintiff generally bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E.W. Const., Inc.,* 776 F.3d 271, 272 (4th Cir. 2015). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either as a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 1999). In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton v. Nat'l. Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 621 n.7 (4th Cir. 2018) (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). In a factual challenge, however, "the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton*, 892 F.3d at 621 n. 7 (citation omitted). "In that circumstance, the [C]ourt 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 673571 at 8 (D. Md. Feb. 10, 2020) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)) (other citations omitted).

Although Defendant erroneously classifies their jurisdictional challenge as "facial" in nature, the parties have proceeded to provide the Court, through their filings for this motion, with evidence to consider outside of the pleadings. (ECF Nos. 11, 14, & 15). Therefore, the Court considers this Motion to Dismiss as a factual challenge to subject matter jurisdiction predicated on the grounds of sovereign immunity. *See Bryant*, slip op. at 8.

### III. ANALYSIS

####   a. Eleventh Amendment Sovereign Immunity[1]

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State." *Id.* at 27 (quoting U.S. CONST. amend. XI). "[S]tate sovereign immunity predates the Eleventh Amendment as a form of immunity the States enjoyed before the ratification of the constitution and originally encompassed a broader concept." *Hammons*, 551 F. Supp. 3d at 584 (citation omitted). Therefore, at its conception "Eleventh Amendment immunity [was] but an example of state sovereign immunity as it applie[s] to suits filed in federal court against unconsenting states by citizens of *other* states." *Id.* (quoting *Hans v. Louisiana*, 134 U.S. 1, 3 (1890)) (emphasis added). However, Eleventh Amendment immunity has been extended to apply to suits by citizens against their own States. *Hammons*, 551 F. Supp. 3d at 585. Thus, "the expansion of the Eleventh Amendment has narrowed the gap between the two concepts considerably" and to the point where the distinction between the two is negligent. *Id.* Therefore, this Court will treat state sovereign immunity as synonymous with Eleventh Amendment immunity. *Id.*

Contrary to Defendant's assertion in (ECF No. 15), the Fourth Circuit has determined that "[b]ecause a defendant otherwise protected by the Eleventh Amendment can waive its protection, it is, as a practical matter, structurally necessary to require the defendant to assert the immunity. We therefore conclude that sovereign immunity is akin to an affirmative defense, which the

---

[1] Defendant has also argued that, as a purported state actor, it cannot be sued pursuant to Section 1981. Were this Plaintiff's only claim, the Court would address this argument prior to reaching the issue of immunity. *See Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 778, 779 (2000) ("When these two questions are at issue, not only is the statutory question logically antecedent to the existence of the Eleventh Amendment question, but also there is no realistic possibility that addressing the statutory question will expand the [c]ourt's power beyond the limits that the jurisdictional restriction has imposed.").

defendant bears the burden of demonstrating." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). Sovereign immunity "bars suit against an instrumentality of a state, sometimes referred to as an 'arm of the state,' including state agencies." *Bryant*, slip op. at 28 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 456 U.S. 89, 101–02 (1984)) (other citations omitted). As Plaintiff correctly argues in (ECF No. 14), whether an entity is an "arm of the state" and afforded protection under sovereign immunity is determined by the standard set forth in *Ram Ditta v. Md. Nat'l. Cap. Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987). *Ram Ditta* provides a nonexclusive list of four factors: "(1) whether the state will pay a judgment against the defendant entity; (2) whether the entity exercises a significant degree of autonomy from the state, (3) whether the entity is involved with local versus statewide concerns, and (4) how the entity is treated as a matter of state law." *Bryant*, slip op. at 29 (quoting *Lane v. Anderson*, 660 F.App'x 185, 195 (4th Cir. 2016) (internal quotations omitted).

### i. Factor 1 Weighs in Favor of Finding that Defendant is an Arm of the State.

While this four-factor test is a "holistic assessment," the United States Supreme Court "has observed that the first factor is generally accorded . . . dispositive weight." *Bryant*, slip op. at 30; *Hammons*, 551 F. Supp. 3d at 586 (citations and internal quotations omitted). In arguing that this factor indicates that Defendant is not an arm of the state, Plaintiff relies exclusively on the Maryland statutes governing Defendant's creation and functions. (ECF No. 14). Section 10-411 of the Maryland Economic Development Code states:

> A debt, claim, obligation, or liability of the Corporation or any subsidiary is not: (1) a debt, claim, obligation, or liability of the State, a unit or instrumentality of the State, or of a State officer or State employee; or (2) a pledge of the credit of the State.

MD. CODE ANN. ECON. DEV. § 10-411 (2020). Plaintiff is correct to assert that such provisions in state law weigh heavily against recognizing an entity as an arm of the state. (ECF No. 14). In *Oberg II*, the Fourth Circuit found that the first factor weighed heavily against arm-of-the-state status due to similar statutory language denying liability. *U.S. ex rel. Oberg. v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 138 (4th Cir.2014) (*Oberg II*). Furthermore, the Pennsylvania Higher Education Assistance Agency ("PHEAA") was obligated by statute to pay any judgment from its own segregated fund. *Id.* Despite Plaintiff's argument, this Court must analyze this initial factor considering whether "the state is *functionally* liable, even if not legally liable." *Hutto*, 773 F.3d at 543 (citations omitted).

Pursuant to Section 10-415, Defendant must provide an annual report that includes but is not limited to "a complete operating and financial statement covering the Corporation's operations; [and] . . . information on all salaries and any incentives approved by the Board for Corporation employees . . . ." MD. CODE ANN. ECON. DEV. § 10-415 (2020). Furthermore, Defendant's budget is provided as a grant, and the State of Maryland is free to subject Defendant to an audit "at any time . . . ." *T50T01 Maryland Technology Development Corporation Fiscal Year 2023 Operating Budget Analysis*, https://mgaleg.maryland.gov/pubs/budgetfiscal/2023fy-budget-docs-operating-T50T01-Maryland-Technology-Development-Corporation.pdf (last visited Sep. 6, 2022); MD. CODE ANN. ECON. DEV. § 10-414 (2020). This annual report indicates that the operating budget for Defendant in 2021, 2022, and 2023 came from a state-provided general allowance, COVID-19 relief, and the State's Rainy Day Fund. *Id.* Additionally, Section 10-408 grants Defendant its general powers, but missing from this statute is any ability to acquire insurance or participate in any other entity's insurance program. *See* MD. CODE ANN. ECON. DEV. § 10-408 (2020); *Ram*

*Ditta*, 822 F.2d at 458 ("[T]he Commission would not be paid from the state treasury . . . [because] the Commission participates in Montgomery County's self-insurance program."). The Court is convinced that, as argued by Defendant, although Maryland is not legally liable for judgments against Defendant, the State is functionally liable as the budget-provider for Defendant.

The Court finds that although the State of Maryland is not legally liable for judgements rendered against Defendant, the State would be functionally liable. *See Hutto*, 773 F.3d at 543. Therefore, the first *Ram Ditta* factor weighs in favor of finding that Defendant is an arm of the state.

### ii. Factor 2 Weighs in Favor of Finding that Defendant is an Arm of the State.

Regarding Defendant's autonomy from the State, the Court should consider a non-dispositive set of attributes: "who appoints the entity's directors or officers, who funds the entity, and whether the state retains a veto over the entity's actions" *Hammons v. Univ. of Md. Med. Sys. Corp.*, No. DKC-2-2088, 2021 WL 4951921 at 3 (D. Md. Oct. 25, 2021) (citation omitted). Furthermore, the Court can consider whether the entity "is represented in legal matters by the state attorney general, and whether the entity has the ability to tax, as the absence of taxation power is a strong indication that the corporation is not an independent one." *Id.* (citations omitted).

Plaintiff correctly asserts that Defendant may "enter into contracts and other legal instruments; sue or be sued; acquire, purchase, hold, and use any real, personal, mixed, tangible, or intangible property." (ECF No. 14); MD. CODE ANN. ECON. DEV. § 10-408 (2020). However, other considerations point towards this factor weighing towards arm-of-the-state status. Defendant's Board of Directors consists of nineteen members: "the Secretary or the Secretary's designee . . . and fourteen members appointed by the Governor with the advice and consent of the Senate." MD. CODE ANN. ECON. DEV. §10-403(b) (2021). The state-appointed board "shall manage

the Corporation and its units and exercise its corporate powers." MD. CODE ANN. ECON. DEV. §10-403(a) (2021). A board of directors consisting of "gubernatorial appointees and state legislators or officials . . . frequently indicates state control." *Oberg II*, 745 F.3d at 139 (citation omitted). In *Oberg II*, the Fourth Circuit considered PHEAA's annual reports showing that PHEAA received no operational funding from the state. *Id.* However, in its annual report for fiscal year 2023, Defendant indicated that the fiscal 2023 allowance included "an increase of $300,000 in general funds for salaries, contractual services for information technology, and other operating costs such as outreach, auditing fees, and training." *T50T01 Maryland Technology Development Corporation Fiscal Year 2023 Operating Budget Analysis*, https://mgaleg.maryland.gov/pubs/budgetfiscal/2023fy-budget-docs-operating-T50T01-Maryland-Technology-Development-Corporation.pdf (last visited Sep. 6, 2022).

Additionally, the Governor may remove an appointed member of the board of directors for "incompetence, misconduct, or failure to perform the duties of the position." MD. CODE ANN. ECON. DEV. § 10-403(h)(2) (2021). Plaintiff recognizes in the Complaint that the closing of funds invested by Defendant are capable of final approval by the Office of the Attorney General." (ECF No. 1). Defendant is represented in legal matters by the Office of the Attorney General, further indicating arm-of-the-state status under factor two. *Hammons*, slip op. at 3; MD. CODE ANN. ECON. DEV. § 10-405(b)(1) (2021) ("The Attorney General Shall assign to the Corporation assistant Attorneys General."). Lastly, Defendant's enumerated powers do not include the power to tax, thereby strongly indicating that the entity is not an independent one. *Hammons*, slip op. at 3 (citing *Oberg II*, 745 F.3d at 137); *see* MD. CODE ANN. ECON. DEV. § 10-408 (2020).

The Court concludes that factor two weighs in favor of finding that Defendant is an arm of the state.

### iii. Factor 3 Weighs in Favor of Finding that Defendant is an Arm of the State.

The third factor is whether Defendant is involved with statewide as opposed to local or other non-state concerns. *Hammons*, 551 F. Supp. 3d at 586. The purpose of Defendant, amongst others, is to "invest in Maryland-based technology companies and promote the commercialization and growth of technology companies and jobs in the State . . . and to foster inclusive and diverse entrepreneurship and innovation *throughout* the State . . . ." MD. CODE ANN. ECON. DEV. § 10-402 (2022) (emphasis added). Furthermore, when appointing members to the board of directors, the Governor must consider "all geographic regions of the State." MD. CODE ANN. ECON. DEV. § 10-403(e)(2) (2021). Furthermore, as indicated by Defendant's 2021 Fiscal Year Report, Defendant invests in qualified businesses throughout the entire state. *See Annual Report and Financial Statement Fiscal Year 2021*, https://www.tedcomd.com/sites/default/files/2022-06/TEDCO%20Annual%20Report%20FY%202021.pdf (last visited Sep. 6, 2022).

Defendant has shown that it is involved primarily in statewide concerns, and factor three weighs in favor of arm-of-the-state status.

### iv. Factor 4 Weighs in Favor of Finding that Defendant is an Arm of the State.

The final factor concerns how Defendant is treated under state law. *Oberg II*, 745 F.3d at 140. Plaintiff and Defendant have asserted that this factor does not assist in the Court's analysis due to the lack of consideration Defendant has had in Maryland State Courts. The Court agrees that there have been no cases—federal or state—that shed light on how Defendant is treated under state law. However, the Court recognizes that Defendant was established by statute to be "an instrumentality of the State." MD. CODE ANN. ECON. DEV. § 10-402(b) (2022). Therefore, factor four weighs only slightly in favor finding that Defendant is an arm of the State.

### v. No Exception to Immunity Applies in this Case.

"The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Van Story v. Wash. Cnty. Health Dept.*, No. ELH-17-3590, 2018 WL 5830740 at *5 (D. Md. Nov. 7, 2018) (citation omitted). "First, Congress may abrogate the State's Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Id.* (citations omitted). "Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Id.* (citations omitted). "Third, a State remains free to waive its Eleventh Amendment immunity from suit in federal court." *Id.* (citations omitted).

"Congress has acted to abrogate the immunity when a state is sued under Title IX or title VI[,] . . . [but] Congress has not taken such action for § 1981 or § 1983." *Middlebrooks v. Univ. of Md. at Coll. Park*, 980 F. Supp. 824, 828 (D. Md. 1997). Furthermore, Plaintiff is not asking for any prospective injunctive relief. (ECF No. 1). Lastly, Maryland has not waived its immunity to the section 1981 claim brought forth by Plaintiff. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 397 (4th Cir. 1990) (citing *Smith v. Bernier*, 701 F.Supp. 1171 (D. Md. 1988); Md. St. Gov't Code Ann. § 12-104 (1984)).

As for Plaintiff's claim pursuant to the MFEPA, the Fourth Circuit has held that the State of Maryland has not waived its Eleventh Amendment immunity as to MFEPA claims. *Pense v. Md. Dep't of Pub. Safety and Corr. Servs.*, 926 F.3d 97, 101–02 (4th Cir. 2019). Plaintiff's state law defamation claim fares no better. Although the Maryland Tort Claims Act ("MTCA") contains a waiver of sovereign immunity for tort actions, it is a limited waiver and only for actions brought in state courts. *See* State Gov't § 12-104(a)(1); *Weller*, 901 F.2d at 397 (citing *Smith*, 701 F. Supp. 1171; State Gov't § 12-104 "clearly limits the state's waiver of immunity.") Further, and of

12

particular importance here, submission of a timely written claim and final denial of that claim by the State Treasurer are conditions precedent to an effective waiver of the state's immunity in tort. *See* State Gov't §§ 12-106, 12-107. In fact, pleading satisfaction of the notice provision of the MTCA is required to state a claim for money damages against the state. *Bales v. Maryland Judiciary*, No. JFM-15-03293, 2016 WL 6879902 at *11–12 (D. Md. Nov. 22, 2016). Plaintiff has failed to allege that she either complied with the procedural prerequisites for bringing a timely claim under the MTCA or effected service on the State Treasurer as required by state law. *See* State Gov't. §§ 12-106(b), 12-107 (a), 12-108(a); *Ferguson v. Loder*, 186 Md. App. 707 (2009).

Therefore, no exception applies to Defendant's assertion of immunity.

## IV.   CONCLUSION

Even considering the facts in the light most favorable to Plaintiff, this Court is convinced that Defendant is an arm of the State. Defendant's budget for operating costs and investment pursuits for the benefit of the State are allocated as an allowance from the State. Furthermore, the State clearly exercises a level of control and monitoring over Defendant to warrant arm-of-the-state status. "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175 (4th Cir. 2013).

For these reasons, Defendants' Motion to Dismiss is GRANTED without prejudice. A separate order follows.

Date: September 8, 2022                                          /s/
                                                                                    J. Mark Coulson
                                                                                    United States Magistrate Judge